IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| KATHERINE SOURS, | ) | Case No.: 2:10-CV-3250-MBS-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **AGE DISCRIMINATION COMPLAINT** |
| | ) | **(JURY TRIAL REQUESTED)** |
| TOWN OF BLUFFTON, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES Plaintiff, by and through her undersigned counsel, and alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff is a resident of Beaufort County South Carolina and a former employee of Defendant.

2. Defendant is a municipal corporation operating with a Council-Manager form of government pursuant to S.C. Code § 5-13-10 *et seq*. in the County of Beaufort and employing more than 20 employees.

3. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district and division.

4. This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. §1331 as Plaintiff asserts a statutory claim under federal law.

5. Plaintiff timely filed a charge of discrimination and received a right to sue letter from the EEOC dated December 2, 2010 attached hereto as Ex. A.

**FACTS**

6. Plaintiff is a fifty- four year old law enforcement officer.

1

7. At the time Plaintiff was hired by Defendant, Defendant did not have a nationally accredited police department and wished to become nationally accredited.

8. Plaintiff was hired by Defendant into the position of Administration Lieutenant because of her extensive background in accreditation.

9. Plaintiff was the first lieutenant hired by Chief McAllister when he started as the Town's Police Chief; she was responsible for both the administrative and operational functions of the police department for five months until another lieutenant was hired.

10. Plaintiff successfully accomplished the goal of getting the Bluffton Police Department nationally accredited within three years of her hire date.

11. Plaintiff's job performance was excellent as evidenced by a letter of recommendation provided to her by Defendant's Town Manager after her alleged "lay off."

12. After Plaintiff completed the accreditation task and Defendant Town became nationally accredited, Chief McAllister transferred Plaintiff and told Town employees he hoped Plaintiff would quit as the result of the transfer.

13. A substantially younger lieutenant was placed in Plaintiff's former position.

14. Chief McAllister routinely called Plaintiff "Nana" because of her age in front of the other officers.

15. Chief McAllister referred to Plaintiff as being his parents' age and called his parents and her the "old people."

16. Chief McAllister told Plaintiff she had more in common with the "old people" and inferred she would not be with the police department for long.

17. Chief McAllister embarrassed Plaintiff by telling other officers she wore granny underwear.

18.	On June 1, 2009, Plaintiff was allegedly "laid off."

19.	Defendant had no formal or written lay off procedure that was utilized to determine how to administer a "lay off" of employees at the time, and still has no such policy.

20.	Chief McAllister told Plaintiff that he chose her to be laid off because she already had a pension.

21.	The Town Manager told Plaintiff her "lay off" was in the best interests of the Town.

22.	Though the Town announced there were 18.5 "lay offs," in fact, no other employee was actually "laid off" except Plaintiff.

23.	Two substantially younger lieutenants with less seniority than Plaintiff were retained during this supposed "lay off."

24.	The Town Manager recently testified under oath that he agreed with Chief McAllister choosing Plaintiff for a lay off because she was already retired and the other two lieutenants were closer to "the arc of their success."

25.	The Town Manager also testified under oath the two younger lieutenants were still "coming along" and they had not retired from another police department as Plaintiff had.

26.	The Town Manager testified under oath that the two younger lieutenants who were not "laid off" had greater potential in the next ten years than Plaintiff did, though he admitted he did not realize one of the younger lieutenants was eligible to retire from the Town within two years.

27.	At the time Plaintiff was "laid off" she would have had to remain employed with the Town for three more years to be vested in the police retirement system and she planned on working at least three more years.

28. Plaintiff's "lay off" was in fact an intentional termination by Colonel McAllister and the Town Manager due to her age.

29. After Plaintiff was "laid off," Defendant stated various false reasons for Plaintiff being chosen to be "laid off" such as Plaintiff was not as good in operations as the younger lieutenants.

30. Plaintiff has much more experience and qualifications than the two substantially younger lieutenants retained by Defendant whose qualifications are inferior to Plaintiff's.

31. Although the Town has received federal grants to rehire police officers subsequent to Plaintiff's alleged "lay off," Plaintiff has not been called back to work.

## FOR A FIRST CAUSE OF ACTION
## 29 U.S.C. § 621-634, VIOLATION OF THE AGE DISCRIMINTION IN EMPLOYMENT ACT (ADEA)

32. Plaintiff incorporates the allegations set forth above as if fully restated herein.

33. Plaintiff was subjected to discrimination based on her age by her supervisors Chief McAllister and the Town Manager when she was singled out for being "laid off" due to her age.

34. Plaintiff's work performance was not an issue.

35. Plaintiff's "lay off" was motivated by age bias.

36. But for Plaintiff's age, she would not have been chosen to be laid off.

37. Defendant placed substantial negative reliance on Plaintiff's age in reaching its decision to terminate her employment.

38. Plaintiff was discriminated against based on her age and is entitled to actual and compensatory damages, back and front pay, emotional distress damages, costs and attorney fees for Defendant's discrimination of her in violation of the ADEA.

WHEREFORE, Plaintiff demands judgment against Defendant for lost back and future pay and benefits resulting from her wrongful termination, compensatory damages, emotional distress damages, pre and post judgment interest as provided by law, attorney fees and costs, and for such other legal and equitable relief as this Court deems just and proper.

FOSTER LAW FIRM, LLC

s/Nancy Bloodgood
Nancy Bloodgood, Esquire
Federal Bar No. 5208
3875 Faber Place Drive, Suite 204
North Charleston, SC 29405
Telephone: (843) 744-3033
Facsimile: (843) 577-0434
Email: nbloodgood@fosterfoster.com

*Attorneys for Plaintiff*

Charleston, South Carolina

Date:   December 22, 2010